(No. 29198.—

The People *ex rel.* John W. Curren, State's Attorney, Appellee, *vs.* John J. Schommer *et al.,* Appellants.

*Opinion filed November 21, 1945.*

18

GEORGE F. BARRETT, Attorney General, (WILLIAM C. WINES, RAYMOND S. SARNOW, and BEN REIDY, all of Chicago, of counsel,) for appellants.

JOHN W. CURREN, State's Attorney, (JAMES L. O'KEEFE, and ROY M. RHODES, of counsel,) all of Springfield, for appellee.

Mr. CHIEF JUSTICE THOMPSON delivered the opinion of the court:

This is an appeal from a judgment of the circuit court of Sangamon county. The action is a proceeding in *quo warranto* and is brought by the People of the State of Illinois, on the relation of the State's Attorney of Sangamon county, under the authority and provisions of "An Act in relation to practice and procedure in cases of quo warranto," approved July 2, 1937. Ill. Rev. Stat. 1943, chap. 112.

The complaint filed alleged that John J. Schommer, Charles A. Jean, E. L. Simmons, G. Harder Binz and William M. Marks, as respondents to the petition, unlawfully and without any warrant, right or authority, pretend that they severally and respectively hold the pretended office of commissioners and members of a pretended commission, authority, or agency of the State of Illinois, styled and called "The Illinois State Superhighway Commission," and presume to exercise the supposed powers which the respondents pretend appertain to such proposed offices.

It is further alleged that the respondent John J. Schommer pretends that there exists, and that he holds, the office of chairman of said commission, and pretends that there exist, and that he is entitled to exercise, certain duties which he pretends appertain to such office.

The complaint further charges that the Illinois Superhighway Act, under which the respondents pretend to act, is unconstitutional, the purported act being "An Act in relation to the construction, operation, regulation and maintenance of a system of superhighways and to create The Illinois State Superhighway Commission, and to define its powers and duties." (Ill. Rev. Stat. 1943, chap. 121, pars. 314a to 314a25, incl.) A copy of such purported act is appended to the complaint or petition marked exhibit "I" and incorporated therein. The respondents, being the chairman and commissioners acting under and by authority of

the act under consideration, filed a motion to strike and dismiss, and later, by leave of court, filed an amendment to the motion to strike and dismiss the complaint. Respondents admit the alleged activity on their part and plead the provisions and validity of the Superhighway Act in justification of their office. The trial court held that the act was null, void and unconstitutional, and overruled respondents' motion to strike the complaint and entered an order that the respondents be ousted from the pretended offices of chairman and members of the Illinois State Superhighway Commission.

The sole question presented by this appeal is the question of the constitutionality of the act creating the Illinois State Superhighway Commission and defining its powers and duties. This cause being so presented, we will hereinafter refer to the appellants as respondents and the appellee as relator, as designated in the trial court. The act provides, in substance, for the creation of a commission to be known as the Illinois State Superhighway Commission, to consist of five members appointed by the Governor. The act contemplates a system of toll roads to be known as superhighways and provides that such system of highways shall be planned, built, operated and maintained by the State Superhighway Commission. The commission is empowered to contract, acquire, hold and convey personal and real property including rights of way, franchises, and easements, to have and use a common seal and to alter the same at will. The commission is given power under the act to issue and sell bonds for the purpose of financing the planning and construction of the contemplated system of superhighways. The act provides that "such bonds and the interest thereon shall be payable solely from the tolls and revenues of the superhighways constructed from the proceeds of the sale of such bonds. No bond issued by the commission or any interest thereon shall be an obligation of the State of Illinois." Further, the act provides that

the bonds issued by the commission may be legal investments by counties, cities, villages, incorporated towns, and other municipal corporations, political subdivisions and public bodies, and public officers thereof, all banks, bankers, trust companies, savings banks and institutions, building and loan associations, savings and loan associations, investment companies, insurance companies, insurance associations and all executors, administrators, guardians, trustees and other fiduciaries may legally invest any sinking funds, moneys or other funds belonging to them or within their control in any bonds or refunding bonds issued by the commission.

The respondents contend the trial court was in error in holding the act unconstitutional in its entirety and consequently entering a judgment of ouster against the respondents. The points relied on by respondents for reversal are: 1. The act is constitutional in its entirety. In particular, (a) it is complete and definite and is not vague or indefinite; (b) it does not purport to delegate legislative or other unlawful power to an administrative commission; (c) the contemplated tolls are not taxes; and hence all arguments against the validity of the act based upon the assumption that such tolls are taxes must fail; (d) the act does not unconstitutionally amend any other act; (e) the act does not delegate unreasonable or arbitrary authority to the respondents. 2. The court erred in entering a judgment of ouster. 3. The court erred in not entering a judgment dismissing the relator's suit.

The first question discussed in the briefs pertains to the contention that the contemplated tolls as provided for in the act are, in substance, taxes; that the act is therefore unconstitutional because (a) it purports to create indebtedness against such taxes; (b) it purports perpetually to appropriate such taxes; and (c) it derogates from the constitutional authority of the Auditor of Public Accounts by confiding such taxes to the commission without the supervision of the Auditor. In support of this contention the

relator relies on the case of *People* v. *Deep Rock Oil Corp.* 343 Ill. 388. This case sustains the validity of the Motor Fuel Tax Law, which act imposes a tax upon the purchases of motor fuel for consumption upon the public highway. The relator's position is that there is no distinction between the exaction considered in the *Deep Rock Oil case* and the exaction of tolls contemplated by the present act. We are unable to perceive any analogy between the holding in the *Deep Rock Oil case* and the contention of the relator that the tolls contemplated by the act under consideration are, in fact, and, in substance, taxes. Section 2(e) of the act provides: "The word 'toll' or 'tolls' shall mean the compensation to be paid to The Illinois State Superhighway Commission for the privilege of using any superhighway, or portions or parts thereof, by vehicular or other traffic."

The collection of tolls as contemplated by the act under consideration is analogous to the collection of revenues of specific revenue-producing properties which we have held on many occasions as not being within the constitutional restrictions of municipal indebtedness. *Krause* v. *Peoria Housing Authority,* 370 Ill. 356; *Ward* v. *City of Chicago,* 342 Ill. 167.

There appears to be a clear cut and definite distinction between the legal conception of tolls and taxes. The essential meaning of a tax is that it is a mode of raising revenue for the public needs for a public purpose. (*Board of Education* v. *Haworth,* 274 Ill. 538.) Tolls are the compensation for the use of another's property. In the case of *Sands* v. *Manistee River Imp. Co.* 123 U. S. 288, 8 S. Ct. 113, the court said: "There is no analogy between the imposition of taxes and the levying of tolls for improvement of highways; and any attempt to justify or condemn proceedings in the one case, by reference to those in the other, must be misleading. Taxes are levied for the support of government, and their amount is regulated by

its necessities. Tolls are the compensation for the use of another's property, or of improvements made by him; and their amount is determined by the cost of the property, or of the improvements, and considerations of the return which such values or expenditures should yield."

Our attention is called to the case of *Snell* v. *City of Chicago,* 133 Ill. 413, wherein the court said that the exaction of tolls from the public was in the nature of a burden or tax. What was said there does not turn upon the definition of taxes or tolls and we do not find the language used as being in point or controlling the instant case.

Relator urges that the act under consideration seeks to delegate such broad and indefinite powers as to completely usurp authority particularly within the legislature's province and thus constitutes an improper legislative delegation, it being argued that the act is unconstitutional as embodying too generous a donation of power to an administrative agency. This court has previously held that, subject to constitutional limitations, the control of the legislature over the public highway is absolute and that the legislature may give jurisdiction of the highways to such authorities as it may see fit. *Mitchell* v. *Lowden,* 288 Ill. 327.

Relator argues that too much authority has been placed in the commission and claims that the act gives untrammeled discretion to the commission in the building and laying out of the highways. Concerning this, the court in *Mitchell* v. *Lowden,* 288 Ill. 327, said: "There is no delegation of either legislative or judicial power to the department of public works and buildings. It is true that many questions,—the material to be used, the width of the roadways, the character of the construction and the plans and specifications therefor, the terms and conditions of contracts, the acceptance or rejection of work done, and the numberless details in carrying out the provisions of the act—are left to the determination of the department

of public works and buildings, which is authorized and required to make all final decisions. The decision of such questions is ministerial."

It is an accepted constitutional doctrine that the General Assembly may not delegate legislative functions to a commission and invest an administrative agency with arbitrary powers, but it has long been accepted that the legislature may delegate that reasonable measure of authority which is necessary to accomplish the constitutional purpose desired. We hardly see how, in this age of modern development of highway and other transportation systems, in order to serve the public's ever increasing demand for safer and more rapid transportation, it can be said that the legislature, which is the voice of the people, has no freedom of action in determining the best methods of giving to the public that service for which it is willing and able to pay. It is the best judge of what is necessary to meet the needs of the public and in what manner the service shall be directed. It is true the General Assembly may not delegate its general legislative authority, but it may, however, confer upon a municipal body, which, by reason of its position, may have more knowledge on the subject or which may do things more expeditiously than the legislature, such power as is not violative of the constitution. *People ex rel. Soble* v. *Gill,* 358 Ill. 261.

It is apparent from a study of the act that it is the expressed desire of the legislature, in promoting public welfare, to create the commission for the purpose of the construction, operation, regulation and maintenance of a superhighway system within the State. The commission has been definitely limited as to its authority in this respect. The act provides for definite limitations upon its general activities and enumerates its powers and limitations. For the purpose of accomplishing the intent expressed by the legislature in the creation of the commission, we cannot

say that there has been too great a grant of power to the commission to accomplish the ends sought to be obtained. Where, as here, an act of the legislature is challenged as being unconstitutional, all that this court can rightfully do is to determine whether that body had the power to pass the enactment. The wisdom of the law is for the legislature and not for the court. *People ex rel. Hill* v. *Eakin,* 383 Ill. 383; *City of Chicago* v. *Manhattan Cement Co.* 178 Ill. 372; *Hawthorn* v. *People,* 109 Ill. 302.

It is contended that section 10 of the Illinois State Superhighway Act violates the provisions of section 18 of article IV of the constitution of 1870, in that this provision gives to the commission the right to borrow without limitation. Section 10 provides: "The Commission is authorized, without limitation of the foregoing powers, to accept grants from, and enter into contracts, leases, or other transactions with the Federal government, or any agency thereof, necessary or expedient to carry out the provisions of this Act."

For the proper consideration and interpretation of this section, in the light of the objection that the relator has urged, it is necessary to consider other provisions of the act as throwing some light upon this same subject, to enable this court to arrive at the true intention of the legislature as expressed in the act.

Section 14 of the act provides, in part, as follows: "The Commission shall have power, by resolution, to issue and sell bonds from time to time in its discretion, to finance, in whole or in part, the cost of the acquisition, purchase, construction, reconstruction, improvement, relocation, alteration or extension of any superhighway and the expenses incident to the exercise of the power conferred upon the Commission, in relation to the construction of a superhighway. Such bonds, and the interest thereon, shall be payable solely from the tolls and revenues of the super-

highway constructed from the proceeds of the sale of such bonds. No bond issued by the Commission, or any interest thereon, shall be an obligation of the State of Illinois."

Section 17 provides, in part: "When all of the obligations of the Commission have been paid, or a reserve for the payment therefor has been provided, as is required herein, the Commission shall be dissolved and all funds of the Commission not required for the payment of bonds, interest, machinery, equipment, property or other obligations of the Commission shall be paid to the State Treasurer of the State of Illinois."

Section 20 of the act provides for the creation of a special fund into which shall be paid the gross total income derived from the sale of bonds, income from tolls, licenses, gifts, donations, concessions, fees, rentals, and all other revenues and provides that this fund shall be "considered always appropriated for the purposes of disbursements, as provided in this Act, and shall be paid out and disbursed only as provided herein, and shall not, at any time, be appropriated or diverted to any other use or purpose."

Section 21 of the act provides: "The Commission shall have no power to levy taxes, or to pledge any of its property, other than money derived from income, for the payments of any of its debts or obligations."

It is therefore apparent that section 10, to which objection has been made, has not been intended, neither do we think it so circumscribed, to empower the commission with the unlimited right to create indebtedness in violation of section 18 of article IV of the constitution. The contrary is apparent from an examination of the act. Sections 14, 17, 20 and 21, appearing subsequent to section 10, clearly indicate the intention of the legislature to limit the power of the commission in its right to create indebtedness. This is also followed by the express direction of the manner in which created indebtedness can be paid, which is solely from the funds received by the commission.

It is clear that there has been a studied effort on the part of the legislature to avoid the very complaint that the relator here urges. It is clearly apparent that the legislature's intention is to limit the power of the commission to the issuance of bonds and the creation of other indebtedness to be payable solely and exclusively from the income derived from the tolls and the other revenues earned by the superhighway in accordance with the provisions of the act.

It is a well-settled rule of statutory construction that in construing statutes, the intention of the legislature will control and that the several provisions of the statute should be construed together in the light of the general purpose and object of the act, so as to give effect to the main intent and purpose of the legislature as therein expressed. *People ex rel. Rice* v. *Wilson Oil Co.* 364 Ill. 406; *People ex rel. Harding* v. *Goldberg,* 332 Ill. 346; *State Public Utilities Com.* v. *Monarch Refrigerating Co.* 267 Ill. 528; *People* v. *Price,* 257 Ill. 587.

Relator contends that the act unconstitutionally amends various acts governing the investment of funds by governmental and municipal bodies and fiduciaries and contends that this power of investment having been regulated by others acts, this act is in violation of the constitutional prohibition expressed in the provisions of section 22 of article IV of the constitution. Counsel do not support their argument with authority and this failure in connection with its brevity bespeaks the weakness of their contention.

An analysis of the particular section of the act complained of by the relator, being section 28, provides as follows: "Counties, cities, villages, incorporated towns, and other municipal corporations, political subdivisions and public bodies, and public officers of any thereof, all banks, bankers, trust companies, savings banks and institutions, building and loan associations, savings and loan associations, investment companies, insurance companies, insurance

associations and all executors, administrators, guardians, trustees and other fiduciaries may legally invest any sinking funds, moneys or other funds belonging to them or within their control in any bonds or refunding bonds issued by the Commission. It is the purpose of this section to authorize the investment in such bonds, or refunding bonds, of all sinking, insurance, retirement, compensation, pension and trust funds, whether owned or controlled by private or public persons or officers; provided, however, that nothing contained in this section may be construed as relieving any officer, person, firm or corporation from any duty of exercising reasonable care in selecting securities."

The General Assembly has the power and authority to provide for construction, maintenance and general supervision of the highways in this State and for such other powers and regulations necessary for the proper operation of legislation pertaining to the highways, and such act is not in violation of section 22 of article IV of our constitution. That section provides that the General Assembly shall not pass special or local laws in certain enumerated cases and "in all other cases where a general law can be made applicable no special law shall be enacted." The legislation here under question does not fall in any of the enumerated classes and the clause requiring the enactment of a general law in all cases where such laws are applicable permits legislative discretion not subject to judicial review. *Krause* v. *Peoria Housing Authority,* 370 Ill. 356; *Herschbach* v. *Kaskaskia Island Sanitary and Levee Dist.* 265 Ill. 388.

Section 28 of the Illinois State Superhighway Act, which authorizes the investment of certain funds in the bonds issued by the commission, is valid. It was proper for the legislature to provide for this discrimination and authorization in the purchase of the commission's bonds, providing the authorization is reasonable. It is well settled that the General Assembly has power to classify per-

sons or objects providing such classification has a reasonable basis. Section 28 of the act constitutes a reasonable basis for separate classification of the investor in that the act provides that these bonds are payable solely from the income received by the commission and the income is pledged solely and exclusively for the payment of these securities. It is unnecessary to refer to other statutory enactments with reference to the investment of trust, insurance and other funds where the act is a separate and complete statute. *Krause* v. *Peoria Housing Authority,* 370 Ill. 356.

It is a general and well-accepted principal of law that all doubt and uncertainty as to the constitutionality of a statute should be resolved in favor of its validity. (*People ex rel. Rice* v. *Wilson Oil Co.* 364 Ill. 406.) It is the duty of the court to so construe acts of the legislature as to uphold their constitutionality and validity if it can be done. Before we can say that the act is unconstitutional, its repugnance to the organic law must clearly appear. (*People* v. *Smith,* 368 Ill. 328.) It is the opinion of this court, and we so hold, that the Illinois State Superhighway Act is a constitutional and valid statutory enactment.

For the reasons herein expressed, it follows that the lower court erred in overruling respondents' motion to strike the complaint.

The judgment of the circuit court of Sangamon county, overruling respondents' motion to strike the complaint and ousting respondents from the offices, respectively, of chairman and members of the Illinois State Superhighway Commission, is reversed, with directions to the circuit court to sustain respondents' motion to strike the complaint, and to dismiss this proceeding.

*Reversed and remanded, with directions.*

Mr. JUSTICE SMITH, specially concurring:

I concur in the result reached, but not in all that is said in the opinion.